# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiffs,<br><br>vs.<br><br>NORMA RODRIGUEZ-ALVARADO,<br><br>            Defendant. | **4:15CR3101**<br><br><br>**MEMORANDUM AND ORDER** |

With a Criminal History category III, the defendant was sentenced by me on February 16, 2017, to five years of probation. That was much reduced from her Guideline range of 108 to 135 months in prison for conspiracy to distribute methamphetamine. She received a substantial assistance departure.

She is currently before me on alleged multiple violations of her conditions of probation including a state court felony conviction for which she received 48 months of probation. She is in federal custody and, due to the fact she was placed on federal probation, I could sentence her up to the statutory maximum of 20 years in prison.

The defendant is 56 years old. She is currently taking the following medications: Furosemide (water pill) 10 mg 1 tab every morning; Escitalopram (anti-depressant) 10 mg 1-tab Q AM; Lamotrigine (mood disorder) 100 mg 1-tab Q AM; Clonidine (mood disorder) 0.1 mg at 8 pm.

Her lawyer and her probation officer have serious questions about her cognitive abilities as did the most recent treatment provider, the Nova Therapeutic Community. The defendant was discharged on or about January 23, 2020, without success. In pertinent part, that report states:

Norma was admitted to NOVA Treatment Community's short-term residential (STR) program on 10/9/2019 due to a federal court order. She identified being eager to change her ways and expressed she does not know why she continues to relapse. She completed all treatment assignments in a timely manner with the exception of her substance use timeline. She reported she did not complete this due to not knowing how to do so. She was encouraged to make herself important in regards to her treatment. She struggled to be assertive with others and reported her substance use first began due to her desire to fit in with others.

Norma minimally engaged in therapeutic groups and was unable to identify what she is triggered by in these groups. She acknowledged her need to hold herself and others accountable but failed to do so at the time of these groups. During both groups and individual sessions, Norma frequently nodded to express understanding and states affirmations such as "yes" and "okay." At times, she has not truly understood what is being said as evidenced by therapist asking her during Seeking Safety group on 10/17/2019. After this was pointed out, Norma asked for further information to clarify.

Norma was held accountable for glorifying her marijuana use in a group as well as caretaking for another member. She struggled to work through the process and think independently without the help of the therapists and other members in the group. She became tearful when speaking about the impact her substance use has had on her family but also struggles to take action to make a change. Due to her lack of awareness of triggers, addictive thinking, and communication difficulties, NOVA's treatment team recommended she transition to the long-term therapeutic community (TC) program. She was agreeable to this plan.

Since transitioning to the TC program, Norma identified wanting to better understand why she keeps relapsing as

well as managing her depressive symptoms, physical pain, improve relationships, and handle being alone. She stated managing her depression is most important at this time. At the next session, she verbalized believing she was unable to work through the program due to her lack of comprehension. She demonstrated this negative talk was throughout several individual sessions and this has been pointed out to her by staff and peers. She reported that reframing her thoughts as well as journaling help her manage her moods.

Over her second month in this program, Norma worked on identifying triggers that influence her symptoms of depression. She also acknowledged her struggle to caretake others when they are fully capable of doing so themselves. She came to one individual session with minimal treatment work completed and lost her free time as a consequence. She was able to complete treatment work to review the following session. She also was granted a pass for the holiday of which she spent with her husband and son. She reported working on healthy communication skills with them and educated them on her relapse warning signs.

Norma struggled throughout the program to make connections between her thoughts, feelings, and behaviors even after spending extended amounts of time reflecting on this. However, she continued to demonstrate persistence and the desire to work on this while in treatment. Norma's insurance does not provide coverage for cognitive testing at this time due to her residing in residential treatment which is considered an inpatient service. Due to this and the aforementioned progress, NOVA is recommending Norma transition to a sober living environment such as a three-quarter way house and engage in intensive outpatient services. It is recommended she attend at least four recovery meetings weekly (e.g., Twelve Steps or SMART Recovery), take all medication as prescribed, refrain from having contact with anyone

> who uses or sells substances, and receive cognitive testing
> on an outpatient basis as covered by her insurance. She
> would leave NOVA by receiving 'maximum benefits.'

In essence, the lawyers, the probation officer and I need to know whether the defendant is competent and what measures I might take at sentencing to improve her chances of complying with her conditions of probation or supervised release and not reoffending. Therefore,

IT IS ORDERED that:

1.     The United States Bureau of Prisons shall designate a medical center for federal prisoners at which the defendant shall be examined pursuant to this order. Upon such designation, the defendant, who is in custody, shall be transported to the place designated by the Bureau of Prisons by the U.S. Marshal. The defendant shall remain at the medical center until released to the U.S. Marshal for return to Nebraska.

2.     Pursuant to Chapter 13, pertaining to offenders with a mental disease or defect, and particularly, but without limitation, 18 U.S.C. §§ 4241(b) and 4244(b), the Bureau of Prisons shall evaluate the defendant and determine: (a) the defendant's present mental condition; and (b) what treatment considerations should be addressed at sentencing to reduce the likelihood that the defendant will reoffend or violate her probation or conditions of release in the future. The Bureau of Prisons shall provide me with a written report in accordance with 18 U.S.C. § 4247(c)(1)-(3) & (4)(E)-(F) and the terms of this order. The evaluation shall be submitted to the court and counsel within the time provided by law starting with the time the defendant is delivered to the medical center.

3.     The defendant's counsel shall promptly provide the probation officer with copies of any evaluations or medical records counsel has in her possession which is not privileged. The officer shall provide the medical center with those

materials together with all other materials the officer believes will assist the medical center in conducting the evaluation, including any presentence reports.

      4.     The probation officer (Megan Davis) assigned to this case is requested to facilitate the implementation of this order and coordinate this case with the Bureau of Prisons. In particular, she shall provide the Bureau with copies of the presentence reports, violation reports and related documents.

      Dated this 5th day of March, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

5